# In the United States Court of Federal Claims

No. 19-1806C

Filed: December 20, 2019

| | |
|---|---|
| NICOLE RENEE CROSBY,<br><br>Plaintiff,<br><br>v.<br><br>OFFICER KIEGER,<br>OFFICER WRIGLEY,<br>PUBLIC DEFENDER MICHELLE AGEE,<br>CANDIE BEADZE,<br>DAVID VICTOR CROSBY,<br>STATE OF IDAHO,<br><br>Defendants.[1] | Pro Se Plaintiff; Subject-Matter Jurisdiction. |

## ORDER

**HORN, J.**

On November 25, 2019, pro se plaintiff Nicole Renee Crosby filed a complaint in the United States Court of Federal Claims against six to nine defendants,[2] none of whom are the United States of America. Also on November 25, 2019, plaintiff filed an Application to Proceed In Forma Pauperis. Plaintiff labels her complaint as "Jury Trial."[3] Plaintiff's complaint begins: "Improper Venue denied for case no. CR24-19-00746 in the State of

---

[1] Rule 10(a) of the Rules of the United States Court of Federal Claims (RCFC) requires the United States to be listed as the defendant. See RCFC 10(a) (2019). Plaintiff's complaint does not list the United States as a defendant.

[2] In the caption of plaintiff's complaint, only six plaintiffs are listed. In a section of the complaint entitled, "Defendants," there are nine listed with the following additional names: "Bonnie Ann Crosby," "Deputy Chelsea Akers," and "Judge Robinson."

[3] The United States Court of Federal Claims does not hold jury trials. See 28 U.S.C. § 174 (2018).

Idaho on 9/19/19, and I also stated for dismisal. Current Judge is Eric J. Wildman[4] and public defender is Phil Brown, not for federal."[5]

Plaintiff's basis for jurisdiction states: "Federal Question: Claims arising under the Constitution, laws, or treaties of the United States. This includes claims brought under 42 U.S.C. § 1983 against state or local officials for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws].'" (brackets in original). Plaintiff claims, in a section entitled "Venue:"

> I was wrongfully treated by DOJ officers, my public defender wasn't fighting for me or my rights, Judge Robbinson denied me improper venue and or the right to speak and stand up for myself on 9/19/19. My federal Civil Rights were violated Statues title 18 U.S. code §249, Due process of law not given Rule 29, 28 U.S.C. 2403. (2), (3), (5) domestic terrorism (b)(i) to intimidate or coerce a civilian population (6)(b). Title 18 U.S.C. section 241 Conspiracy. My fourth, fifth, eighth, and fourteenth amendments violated. I wasn't taken serious on 5/15/19. This all took place over a complaint, hearsay.

Plaintiff contends in Count One:

> 1. my federal Civil Rights Statues title 18 U.S. code § 249, title 18 U.S.C. section 241 Conspiracy, 42 U.S. Code § 1983,(2),(3),(5) domestic terrorism(b)(i) to intimidate or coerce a civilian population (6)(b).Improper Venue.
>
> 2. The time was after 5pm on may 20th 2019, for some reason I believed it was on a Sunday and said or wrote 19th. States Discovery said 20th. 3320 S. 2000 E. Wendell Idaho 83355, Amendment 14, I wasn't equally protected. Due process of law.

Plaintiff alleges in Count Two:

> 1. Michelle L. Agee refused to file any paper work on my behalf before preliminary hearing so on 9/5/19 I filed my own dismisal that Judge Robbinson refused because public defender didn't do it, then I get mail from Agee dated 10/21/19 stating she disqualified District Judge Emory on my behalf. And a very valuable arrow head missing from purse upon release 5/30/19.

---

[4] In the paragraph quoted immediately below, plaintiff alleges she was improperly treated by "Judge Robbinson."

[5] Capitalization, grammar, punctuation, abbreviations, spelling, emphasis, and choice of words when quoted in this Order are as they originally appear in plaintiff's submissions to this court. To note, plaintiff spells the same word differently throughout her pleadings.

2

      2. All above violating my 5th Amendment my life jeopardized and deprived of property. Amendment 6 violated, Counsel was suppose to assist in my defense, leading to Article 6 miscellaneous provisions (2) judges in every state shall be bound thereby, anything in the Constitution or laws of any state to the contrary notwith public trust under the United States.

      3. Read my suppresion and dismisal I wrote thourghly, the clerks in Gooding county refused to file for me on 10/28/19.

Following the two counts, plaintiff lists seventeen "Questions and Statements:"

      1. Officer Wrigley what were the first words out of your mouth when I stepped out the door that evening?

      2. For the record I believe this took place on a Sunday in jail I wrote 20th got home seen Sunday was 5/19/19 thats why I said 19th or 20th on first motions I was put to shame over, did not recieve States discovery untill filing motion 9/5/19 at 8:15 am. Their discovery on page D37 says 5/21/19 in custody two days please explain.

      3. Officer Wrigley what reason or Jurisdiction did you have to place your hands on me, the journal in my hand or a statement you allegedly read?

      4. Did you honestly witness a crime or alleged crime before placing your hands on me?

      5. If yes what crime would that be? and Due process of law, was I treated equally? because I never threatened anyone.

      6. Who did I assault? (no one did I Nicole Renee Crosby) And while being booked, charges added whos possesion was my purse in that contained my arrow head?

      7. On incident report why does it say Chev II when I haven't had that vehicle in about 13 years. Isn't my car a buick 2005 century?

      8. Also officer Wrigley why does incident report state mailing address in Oregon and physical as 3320 S. 2000 E. Wendell, Id 83355 my mailing address should be the same here in Wendell.

      9. If officer Wrigley can't be honest about those two simple facts, what crime did I committ for you to place your hands on me or place me in hand cuffs?

10. What Jurisdiction did officer Kieger have to tell another officer to put a medical hold on me_N.C.?

11. Why would Dave Crosby legal name Loyal David Crosby be a states witness when both you officer Wrigley and I Nicole Renee Crosby heard David Victor say our dad was in Whyoming and I had filed and sent messages in search of him?

12. The alleged possesion, how many items? D48 states discovery says plastic bag 1 item. D51 states discovery say plural items weighing 5.75 other crystaline material not weighed and D48 says weight 10.3 one item.

13. D50 states discovery Deputy AKers state I had filed missing persons report and I say federally murdered she officer says harmed, In my womb, by Candie Beadze with federal energy, Why when I stated that would you grab me say I need to stop resisting and start co-operating

14. D41 states Discovery what right would officer Kieger have to ask you to place me in medical or protective cusstody, He wasn't at scene nor had I even had a run in with him since 2/5-7/2017 not exact day. Proves Conspiracy in States discovery.

15. And why was I refused medical after being pinned down to the ground with your knee in my back causing my rib problem?

16. What reason did you have to decide I was goin to jail instead of hospital when returning to your vehicle with my purse, I wouldn't of asked you to grab it if there were drugs in it, I didn't want my arrow head or tablet taken is why I asked for them the arrow head I found behind my residency.

17. These questions and statements I have written pertain to CR24-19-00746 state of Idaho v. self Nicole Renee Crosby. And my own concience well being, how do others get away with murder, when I'm innocent of allegations?

Plaintiff concludes by requesting relief:

I would like the court to pursue my Civil suit, and others to be held accountable for their actions too. I never even threatened anyone when CR24-19-00746 allegations against me began. I would also like my alleged criminal charges to be dismissed, I had an arrow head in my purse at the time and would also like it returned. Also to know my blood mother Debbie Renee Stovall is oK she lives in Oregon and I was told federally bad things, happened to her. Also Loyal too, I was told Federally Candy had done. I've had two mental health evaluations and this is all scary.

4

> I did all my own legal home work please help, and no don't need my parentals guidance.

After her request for relief, plaintiff contends:

> Some info I copied from internet like how to and I have been reading through Supreme Court Rule book also the United States and State of Idaho Constitution and Amendments.
>
> I rewrote my dismissal into a suppresion, dissmisal, and my own declaration I had notarized when I went to court on 10/28/19. Clerk refused so I handed copies over to new public defender Mr. Phil A. Brown. pbrown@brownlawidaho.com, I gave them to him at Gooding Courthouse, Mr Browns work address 130 4ᵗʰ ave West, Gooding, Id 83330. I added legal example to my argument from an example I had been refering to as I wrote all mine and then examples, I added.

On December 9, 2019, the Clerk's Office received a letter from the plaintiff regarding this case. Because there is no provision in the Rules of the United States Court of Federal Claims for the filing of such a letter, the Clerk's Office was directed to return it to plaintiff unfiled.

## DISCUSSION

The court recognizes that plaintiff is proceeding pro se. When determining whether a complaint filed by a pro se plaintiff is sufficient to invoke review by a court, a pro se plaintiff is entitled to a more liberal construction of the pro se plaintiff's pleadings. See Haines v. Kerner, 404 U.S. 519, 520-21 (requiring that allegations contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), reh'g denied, 405 U.S. 948 (1972); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007); Hughes v. Rowe, 449 U.S. 5, 9-10 (1980); Estelle v. Gamble, 429 U.S. 97, 106 (1976), reh'g denied, 429 U.S. 1066 (1977); Matthews v. United States, 750 F.3d 1320, 1322 (Fed. Cir. 2014); Jackson v. United States, 143 Fed. Cl. 242, 245 (2019), appeal docketed; Diamond v. United States, 115 Fed. Cl. 516, 524 (2014), aff'd, 603 F. App'x 947 (Fed. Cir.), cert. denied, 135 S. Ct. 1909 (2015). However, "there is no 'duty [on the part] of the trial court . . . to create a claim which [plaintiff] has not spelled out in his [or her] pleading . . . .'" Lengen v. United States, 100 Fed. Cl. 317, 328 (2011) (alterations in original) (quoting Scogin v. United States, 33 Fed. Cl. 285, 293 (1995) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975))); see also Bussie v. United States, 96 Fed. Cl. 89, 94, aff'd, 443 F. App'x 542 (Fed. Cir. 2011); Minehan v. United States, 75 Fed. Cl. 249, 253 (2007). "While a pro se plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, the pro se plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." Riles v. United States, 93 Fed. Cl. 163, 165 (2010) (citing Hughes v. Rowe, 449 U.S. at 9; and Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2002)); see also Kelley v. Secretary, U.S. Dep't of Labor, 812 F.2d 1378, 1380 (Fed. Cir. 1987) ("[A] court may not similarly take a liberal

view of [] jurisdictional requirement[s] and set a different rule for pro se litigants only.").[6] Hale v. United States, 143 Fed. Cl. 180, 184 (2019) ("[E]ven pro se plaintiffs must persuade the court that jurisdictional requirements have been met." (citing Bernard v. United States, 59 Fed. Cl. 497, 499, aff'd, 98 F. App'x 860 (Fed. Cir. 2004))); Golden v. United States, 129 Fed. Cl. 630, 637 (2016); Shelkofsky v. United States, 119 Fed. Cl. 133, 139 (2014) ("[W]hile the court may excuse ambiguities in a pro se plaintiff's complaint, the court 'does not excuse [a complaint's] failures.'" (quoting Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995))); Harris v. United States, 113 Fed. Cl. 290, 292 (2013) ("Although plaintiff's pleadings are held to a less stringent standard, such leniency 'with respect to mere formalities does not relieve the burden to meet jurisdictional requirements.'" (quoting Minehan v. United States, 75 Fed. Cl. at 253)).

"Subject-matter jurisdiction may be challenged at any time by the parties or by the court sua sponte." Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir. 2004) (citing Fanning, Phillips & Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998)), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. denied, 545 U.S. 1127 (2005); see also St. Bernard Parish Gov't v. United States, 916 F.3d 987, 992-93 (Fed. Cir. 2019) ("[T]he court must address jurisdictional issues, even sua sponte, whenever those issues come to the court's attention, whether raised by a party or not, and even if the parties affirmatively urge the court to exercise jurisdiction over the case." (citing Foster v. Chatman, 136 S. Ct. 1737, 1745 (2016)); Int'l Elec. Tech. Corp. v. Hughes Aircraft Co., 476 F.3d 1329, 1330 (Fed. Cir. 2007). The Tucker Act, 28 U.S.C. § 1491 (2018), grants jurisdiction to this court as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. See United States v. Navajo Nation, 556 U.S. 287, 289-90 (2009); see also United States v. Mitchell, 463 U.S. 206, 216 (1983); Alvarado Hosp., LLC v.

---

[6] Several recent, though unpublished, cases by the United States Court of Appeals for the Federal Circuit have reiterated that pro se litigants are not relieved of the requirement to prove that their claims fall within the jurisdiction of the court and cite to Kelley v. Secretary, United States Department of Labor, 812 F.2d 1378, 1380 (Fed. Cir. 1987), for the proposition. See Curry v. United States, No. 2019-1486, 2019 WL 4927020, at *2 (Fed. Cir. Oct. 7, 2019); Rojas-Vega v. United States, No. 2019-1475, 2019 WL 3731313, at *2 n.3 (Fed. Cir. Aug. 8, 2019); Stekelman v. United States, 752 F. App'x 1008, 1010 (Fed. Cir. 2018).

6

Price, 868 F.3d 983, 991 (Fed. Cir. 2017); Greenlee Cnty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 552 U.S. 1142 (2008); Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999). "Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States . . . ." United States v. Mitchell, 463 U.S. at 216; see also United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003); N.Y. & Presbyterian Hosp. v. United States, 881 F.3d 877, 881 (Fed. Cir. 2018); Smith v. United States, 709 F.3d 1114, 1116 (Fed. Cir.), cert. denied, 571 U.S. 945 (2013); RadioShack Corp. v. United States, 566 F.3d 1358, 1360 (Fed. Cir. 2009); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1343 (Fed. Cir. 2008) ("[P]laintiff must . . . identify a substantive source of law that creates the right to recovery of money damages against the United States."); Jackson v. United States, 143 Fed. Cl. at 245. In Ontario Power Generation, Inc. v. United States, the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims. The Ontario Power Generation, Inc. court wrote:

> The underlying monetary claims are of three types. . . . First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver . . . . Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." Eastport S.S. [Corp. v. United States, 178 Ct. Cl. 599, 605-06,] 372 F.2d [1002,] 1007-08 [(1967)] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket'" (quoting Clapp v. United States, 127 Ct. Cl. 505, 117 F. Supp. 576, 580 (1954)) . . . . Third, the Court of Federal Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." Eastport S.S., 372 F.2d at 1007. Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." Id.; see also [United States v. ]Testan, 424 U.S. [392,] 401-02 [(1976)] ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim-whether it be the Constitution, a statute, or a regulation-does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself . . . can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" (quoting Eastport S.S., 372 F.2d at 1009)). This category is commonly referred to as claims brought under a "money-mandating" statute.

Ont. Power Generation, Inc. v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004); see also Samish Indian Nation v. United States, 419 F.3d 1355, 1364 (Fed. Cir. 2005); Twp. of Saddle Brook v. United States, 104 Fed. Cl. 101, 106 (2012).

To prove that a statute or regulation is money-mandating, a plaintiff must demonstrate that an independent source of substantive law relied upon "'can fairly be interpreted as mandating compensation by the Federal Government.'" United States v. Navajo Nation, 556 U.S. at 290 (quoting United States v. Testan, 424 U.S. at 400); see also United States v. White Mountain Apache Tribe, 537 U.S. at 472; United States v. Mitchell, 463 U.S. at 217; Blueport Co., LLC v. United States, 533 F.3d 1374, 1383 (Fed. Cir. 2008), cert. denied, 555 U.S. 1153 (2009). The source of law granting monetary relief must be distinct from the Tucker Act itself. See United States v. Navajo Nation, 556 U.S. at 290 (The Tucker Act does not create "substantive rights; [it is simply a] jurisdictional provision[] that operate[s] to waive sovereign immunity for claims premised on other sources of law (e.g., statutes or contracts)."). "'If the statute is not money-mandating, the Court of Federal Claims lacks jurisdiction, and the dismissal should be for lack of subject matter jurisdiction.'" Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1308 (Fed. Cir. 2008) (quoting Greenlee Cnty., Ariz. v. United States, 487 F.3d at 876); see also N.Y. & Presbyterian Hosp. v. United States, 881 F.3d at 881; Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (noting that the absence of a money-mandating source is "fatal to the court's jurisdiction under the Tucker Act"); Jackson v. United States, 143 Fed. Cl. at 245 ("If the claim is not based on a 'money-mandating' source of law, then it lies beyond the jurisdiction of this Court." (citing Metz v. United States, 466 F.3d 991, 997 (Fed. Cir. 2006)).

"Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir.) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 9-10 (1983)), reh'g denied (Fed. Cir. 1997); see also Klamath Tribe Claims Comm. v. United States, 97 Fed. Cl. 203, 208 (2011); Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. 710, 713 (2010). A plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2) (2019); Fed. R. Civ. P. 8(a)(1), (2) (2019); see also Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-57, 570 (2007)). To properly state a claim for relief, "[c]onclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998); see also McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1363 n.9 (Fed. Cir. 2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. WRIGHT AND A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1286 (3d ed. 2004)); "A plaintiff's factual allegations must 'raise a right to relief above the speculative level' and cross 'the line from conceivable to plausible.'" Three S Consulting v. United States, 104 Fed. Cl. 510, 523 (2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555), aff'd, 562 F. App'x 964 (Fed. Cir.), reh'g denied (Fed. Cir. 2014); see also Hale v. United States, 143 Fed. Cl. at 190. As stated in Ashcroft v. Iqbal, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' 550 U.S. at 555. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555).

Plaintiff's complaint is difficult to follow, and it appears that plaintiff is confused about the jurisdiction of this court. In plaintiff's "Basis for Jurisdiction" section of her complaint, as noted above, she cites to "42 U.S.C. § 1983." To the extent plaintiff is trying to allege a general violation of their civil rights under 42 U.S.C. § 1983, the United States Court of Federal Claims lacks jurisdiction to hear claims alleging a deprivation of civil rights under color of law. See Elkins v. United States, 229 Ct. Cl. 607, 608 (1981) ("[W]e do not have jurisdiction over claims based upon alleged violations of the civil rights laws." (citation omitted)); see also Weir v. United States, 141 Fed. Cl. 169, 177-78 (2018); Johnson v. United States, 135 Fed. Cl. 565, 575 (2017) ("Section 1343 of Title 28 provides the federal District Courts original jurisdiction over any relief requested under an 'Act of Congress providing for the protection of civil rights.'" (citations omitted)); Vincent v. United States, 135 Fed. Cl. 561, 563 (2017), ("[A]ctions for civil rights violations brought under 42 U.S.C. § 1983 (2012) cannot be heard by this court." (citing Marlin v. United States, 63 Fed. Cl. 475, 476 (2005), appeal dismissed, 146 F. App'x 491 (Fed. Cir. 2005))), aff'd, 733 F. App'x 529 (Fed. Cir. 2018); Wagstaff v. United States, 105 Fed. Cl. 99, 109 (2012); May v. United States, 104 Fed. Cl. 278, 284 (2012), aff'd, 534 F. App'x 930 (Fed. Cir. 2013). Furthermore, in Blassingame v. United States, a judge of this court determined that jurisdiction is lacking over claims brought pursuant to civil rights laws, including 42 U.S.C. § 1983, as jurisdiction for such claims remains exclusively with the United States District Courts. The Blassingame court stated:

> Section 1983 is not a jurisdiction-granting statute. District courts are given jurisdiction to hear claims for damages for violation of that provision by virtue of 28 U.S.C. § 1343(a)(4) (1988). Such an action cannot be sustained here, however, because this court has not been given an equivalent jurisdiction. See Sanders v. United States, 32 Fed. Cl. 573, 576 (1995); Anderson v. United States, 22 Cl. Ct. 178, 179 n.2 (1990), aff'd, 937 F.2d 623 (Fed. Cir. 1991).

Blassingame v. United States, 33 Fed. Cl. 504, 505, aff'd, 73 F.3d 379 (Fed. Cir. 1995), reh'g denied (Fed. Cir.), cert. denied, 517 U.S. 1237 (1996). Accordingly, this court dismisses plaintiff's claims which allege violations under 42 U.S.C. § 1983 for lack of jurisdiction.

Plaintiff claims in Count Two: "Amendment 6 violated, Counsel was suppose to assist in my defense, leading to Article 6 miscellaneous provisions." Insofar as plaintiff's claims may try to allege a violation of her rights under the Sixth Amendment to the United States Constitution, the Sixth Amendment is not money-mandating and, therefore, jurisdiction to review these claims does not lie in this court. See Dupre v. United States, 229 Ct. Cl. 706, 706 (1981) ("[T]he fourth and sixth amendments do not in themselves obligate the United States to pay money damages; and, therefore, we have no jurisdiction over such claims."); see also Taylor v. United States, 139 Fed. Cl. 4, 8 (2018) (stating that "the court has determined that it does not have jurisdiction to adjudicate the Sixth Amendment claims"), aff'd, 747 F. App'x 863 (Fed. Cir. 2019); Turpin v. United States, 119 Fed. Cl. 704, 707 (2015) ("To the extent that Ms. Turpin's complaint brings constitutional challenges under the Due Process Clause and the Sixth Amendment, the

9

Court cannot hear such claims because neither of these constitutional provisions is a money-mandating source."); Gable v. United States, 106 Fed. Cl. 294, 298 (2012) ("[T]he United States Court of Federal Claims does not have jurisdiction to adjudicate the alleged violations of Plaintiff's Sixth Amendment rights, because that constitutional provision is not money-mandating."); Treece v. United States, 96 Fed. Cl. 226, 231 (2010) (citing Milas v. United States, 42 Fed. Cl. 704, 710, aff'd, 217 F.3d 854 (Fed. Cir. 1999)); Smith v. United States, 51 Fed. Cl. 36, 38 (2001) (finding that the Court of Federal Claims lacks jurisdiction over Sixth Amendment ineffective assistance of counsel claims), aff'd, 36 F. App'x 444 (Fed. Cir.), reh'g denied, 42 F. App'x 469 (Fed. Cir.), cert. denied, 537 U.S. 1010 (2002).

Plaintiff also claims that her "fourth" amendment was "violated." This court, however, does not have jurisdiction over claims based on the Fourth Amendment. See LaChance v. United States, 15 Cl. Ct. 127, 130 (1988) ("[T]he fourth amendment does not mandate the payment of money by the United States." (citing Shaw v. United States, 8 Cl. Ct. 796, 800 (1985))); Roberson v. United States, 115 Fed. Cl. 234, 240 ("The Fourth Amendment is not money-mandating." (citing Brown v. United States, 105 F.3d 621, 623 (Fed. Cir. 1997))), appeal dismissed, 556 F. App'x 966 (Fed. Cir. 2014); Haka v. United States, 107 Fed. Cl. 111, 113-14 (2012); Kam-Almaz v. United States, 96 Fed. Cl. 84, 89 (2011) ("[T]his Court does not have jurisdiction to hear claims contesting the lawfulness of a search and seizure because due process and Fourth Amendment claims are reserved to the District Court." (citing LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995))), aff'd, 682 F.3d 1364 (Fed. Cir. 2012).

Plaintiff claims that her "fifth" and "fourteenth amendments" were "violated" and "Due process of law" was "not given" to her. The United States Court of Appeals for the Federal Circuit also has held that this court does not have jurisdiction to consider claims arising under the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution. See Crocker v. United States, 125 F.3d 1475, 1476 (Fed. Cir. 1997) (concluding that the United States Court of Federal Claims has no jurisdiction over a due process violation under the Fifth and Fourteenth Amendments (citing LeBlanc v. United States, 50 F.3d at 1028)); see also Smith v. United States, 709 F.3d at 1116 ("The law is well settled that the Due Process clauses of both the Fifth and Fourteenth Amendments do not mandate the payment of money and thus do not provide a cause of action under the Tucker Act." (citing LeBlanc v. United States, 50 F.3d at 1028)); In re United States, 463 F.3d 1328, 1335 n.5 (Fed. Cir. ) ("[B]ecause the Due Process Clause is not money-mandating, it may not provide the basis for jurisdiction under the Tucker Act."), reh'g and reh'g en banc denied (Fed. Cir. 2006), cert. denied sub nom. Scholl v. United States, 552 U.S. 940 (2007); Acadia Tech., Inc. & Global Win Tech., Ltd. v. United States, 458 F.3d 1327, 1334 (Fed. Cir. 2006); Collins v. United States, 67 F.3d 284, 288 (Fed. Cir.) ("[T]he due process clause does not obligate the government to pay money damages."), reh'g denied (Fed. Cir. 1995); Mullenberg v. United States, 857 F.2d 770, 773 (Fed. Cir. 1988) (finding that the Due Process clauses "do not trigger Tucker Act jurisdiction in the courts"); Murray v. United States, 817 F.2d 1580, 1583 (Fed. Cir. 1987) (noting that the Fifth Amendment Due Process clause does not include language mandating the payment of money damages); Vondrake v. United States, 141 Fed. Cl.

10

599, 602 (2019) (citing Smith v. United States, 709 F.3d at 1116), aff'd, 2019 WL 5960464 (Fed. Cir. Nov. 13, 2019); Weir v. United States, 141 Fed. Cl. at 177; Maehr v. United States, 139 Fed. Cl. 1, 3-4 (2018) (stating that Smith v. United States, 709 F.3d at 1114, "remains controlling law today"), aff'd, 767 F. App'x 914 (Fed. Cir. 2019), cert. denied, 140 S. Ct. 49 (2019); Zainulabeddin v. United States, 138 Fed. Cl. 492, 505 (2018) (citing LeBlanc v. United States, 50 F.3d at 1028); Harper v. United States, 104 Fed. Cl. 287, 291 n.5 (2012); Hampel v. United States, 97 Fed. Cl. 235, 238, aff'd, 429 F. App'x 995 (Fed. Cir. 2011), cert. denied, 565 U.S. 1153 (2012). Due process claims "must be heard in District Court." Kam-Almaz v. United States, 96 Fed. Cl. at 89 (2011) (citing Acadia Tech., Inc. & Global Win Tech., Ltd. v. United States, 458 F.3d at 1334), aff'd, 682 F.3d 1364 (Fed. Cir. 2012).

Plaintiff claims that her "eighth" amendment was "violated." Plaintiff's alleged Eighth Amendment violation also fails because this court does not have jurisdiction over claims brought under the Eighth Amendment to the United States Constitution. See Trafny v. United States, 503 F.3d 1340, 1340 (Fed. Cir. 2007) ("The Court of Federal Claims does not have jurisdiction over claims arising under the Eighth Amendment, as the Eighth Amendment 'is not a money-mandating provision.'" (citations omitted)); Mitchell v. United States, 136 Fed. Cl. 286, 289 (2018) (concluding that the court lacked jurisdiction over Eighth Amendment claims (citing Trafny v. United States, 503 F.3d at 1340)); Godfrey v. United States, 131 Fed. Cl. 111, 120 (2017) ("But, the Fourth, Sixth and Eighth Amendments, and the Due Process Clauses of the Fifth and Fourteenth Amendments are not money mandating." (citing Trafny v. United States, 503 F.3d at 1340)); Hernandez v. United States, 93 Fed. Cl. 193, 198 (2010) ("Plaintiff avers that his rights under the First, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Fourteenth, and Fifteenth Amendments were violated. None of these claims allege a violation for which money damages are mandated."); Tasby v. United States, 91 Fed. Cl. 344, 346 (2010) ("[T]he Eighth Amendment prohibitions of excessive bail or fines, as well as cruel and unusual punishment, are not money-mandating." (citation omitted)). Therefore, plaintiff's constitutional claims alleging a violation of her "fourth, fifth, eighth, and fourteenth amendments" fail.

Plaintiff further alleges, "I was wrongfully treated by DOJ officers, my public defender wasn't fighting for me or my rights." Plaintiff also appears to allege multiple acts of criminal conduct, including "title 18 U.S. code § 249" which is the statutory provision for hate crimes, "domestic terrorism" to "intimidate or coerce a civilian population," and "conspiracy." To the extent that plaintiff may be asserting claims of criminal conduct, this court lacks subject matter jurisdiction to adjudicate such claims. The jurisdiction of the United States Court of Federal Claims does not include jurisdiction over criminal causes of action. See Joshua v. United States, 17 F.3d 378, 379 (Fed. Cir. 1994); see also Cooper v. United States, 104 Fed. Cl. 306, 312 (2012) ("[T]his court does not have jurisdiction over [plaintiff's] claims because the court may review neither criminal matters, nor the decisions of district courts." (internal citation omitted)); Mendes v. United States, 88 Fed. Cl. 759, 762, appeal dismissed, 375 F. App'x 4 (Fed. Cir. 2009); Hufford v. United States, 87 Fed. Cl. 696, 702 (2009) (holding that the United States Court of Federal Claims lacked jurisdiction over claims arising from the violation of a criminal statute);

11

Fullard v. United States, 78 Fed. Cl. 294, 301 (2007) ("[P]laintiff alleges criminal fraud, a subject matter over which this court lacks jurisdiction." (citing 28 U.S.C. § 1491; Joshua v. United States, 17 F.3d at 379)); McCullough v. United States, 76 Fed. Cl. 1, 4 (2006) (finding that the United States Court of Federal Claims lacked jurisdiction to consider plaintiff's criminal claims), appeal dismissed, 236 F. App'x 615, reh'g denied, (Fed. Cir.), cert. denied, 552 U.S. 1050 (2007); Matthews v. United States, 72 Fed. Cl. 274, 282 (finding that the court lacked jurisdiction to consider plaintiff's criminal claims), recons. denied, 73 Fed. Cl. 524 (2006). Thus, plaintiff's criminal claims also fail.

Plaintiff also appears to raise allegations of wrongful or negligent conduct, which sound in tort. Plaintiff states, "And why was I refused medical after being pinned down to the ground with your Knee in my back causing my rib problem?" The Tucker Act specifically excludes tort claims from the jurisdiction of the United States Court of Federal Claims. See 28 U.S.C. § 1491(a) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.") (emphasis added); see also Keene Corp. v. United States, 508 U.S. 200, 214 (1993); Rick's Mushroom Serv. Inc., v. United States, 521 F.3d 1338, 1343 (Fed. Cir. 2008); Alves v. United States, 133 F.3d 1454, 1459 (Fed. Cir. 1998); Brown v. United States, 105 F.3d at 623 ("Because Brown and Darnell's complaints for 'fraudulent assessment[s]' are grounded upon fraud, which is a tort, the court lacks jurisdiction over those claims."), reh'g denied (Fed. Cir. 1997); Golden Pac. Bancorp v. United States, 15 F.3d 1066, 1070 n.8 (Fed. Cir.), reh'g denied, en banc suggestion declined (Fed. Cir.), cert. denied, 513 U.S. 961 (1994); Hampel v. United States, 97 Fed. Cl. at 238; Kant v. United States, 123 Fed. Cl. 614, 616 (2015) ("[Plaintiff's] claims for 'conversion' and 'fraud' sound in tort . . . ."); Cox v. United States, 105 Fed. Cl. 213, 218 (2012) ("[P]laintiffs contend that the United States has engaged in tortious conduct, including harassment and persecution, malfeasance, fraud, abuse, and deception . . . . The Court of Federal Claims does not possess jurisdiction to entertain claims sounding in tort."); Jumah v. United States, 90 Fed. Cl. 603, 607 (2009) ("[I]t is well-established that the Court of Federal Claims does not have jurisdiction over tort claims."), aff'd, 385 F. App'x 987 (Fed. Cir. 2010); Woodson v. United States, 89 Fed. Cl. 640, 650 (2009); Fullard v. United States, 77 Fed. Cl. 226, 230 (2007) ("This court lacks jurisdiction over plaintiff's conspiracy claim because the Tucker Act specifically states that the Court of Federal Claims does not have jurisdiction over claims 'sounding in tort.'"); Edelmann v. United States, 76 Fed. Cl. 376, 379–80 (2007) ("This Court 'does not have jurisdiction over claims that defendant engaged in negligent, fraudulent, or other wrongful conduct when discharging its official duties'") (quoting Cottrell v. United States, 42 Fed. Cl. 144, 149 (1998)); McCullough v. United States, 76 Fed. Cl. at 3; Agee v. United States, 72 Fed. Cl. 284, 290 (2006); Zhengxing v. United States, 71 Fed. Cl. 732, 739, aff'd, 204 F. App'x 885 (Fed. Cir.), reh'g denied (Fed. Cir. 2006). Plaintiff's tort claims also fail to raise any proper jurisdictional claims.

To the extent that any of the allegations in plaintiff's complaint sound in tort, allege the above constitutional violations, allege violations in a state criminal case, or allege

criminal conduct, as discussed above, this court does not have jurisdiction to adjudicate those claims. Plaintiff's complaint, therefore, must be dismissed for lack of subject matter jurisdiction.

Attached to the complaint are forty-seven supplemental pages of information, including what appears to be a petition for a writ of certiorari from the "Fifth Judicial District of State of Idaho In & For County of Gooding" to the United States Supreme Court. Within this petition for writ of certiorari, there is a page which states, "[p]etitioner respectfully prays that a writ of certiorari issue to review the judgment below." Plaintiff indicated that the opinions from the lower courts – from which plaintiff claims to be appealing – are opinions issued from both the "United States Court of Federal Claims" and "Gooding County Court House." Based on information derived from the Idaho State Court System online docket portal, iCourt, plaintiff's criminal case is still ongoing, with a jury trial set for February 20, 2020. See Searching Directions for CR24-19-00746, iCOURT PORTAL, https://mycourts.idaho.gov/odysseyportal/ (follow "Smart Search" hyperlink; then search CR24-19-00746 and press submit; select the hyperlink case number).

## CONCLUSION

For the reasons above, plaintiff's complaint is **DISMISSED**. The Clerk of the Court shall enter **JUDGMENT** dismissing plaintiff's complaint. Plaintiff's Application to Proceed In Forma Pauperis is **MOOT**.

**IT IS SO ORDERED.**

**MARIAN BLANK HORN**
**Judge**